UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

| | |
|---|---|
| ADVANCED ACCESSORY SYSTEMS, LLC, | Chapter 7 |
| | Case No. 09-60100 |
| Debtor. | Hon. Marci B. McIvor |

_____/

ROBERT RICHARDS, LARRY BOND,
KAREN BONKOSKI, LINDA BROZOWSKI,
ROSA FOX AND MARY GRIFFOR, INDIVIDUALLY
AND ON BEHALF OF ALL SIMILARLY SITUATED
INDIVIDUALS,

        Plaintiff,

v.                                                                  Adv. Proc. 09-6759

ADVANCED ACCESSORY SYSTEMS, LLC,

        Defendant.

_____/

**<u>OPINION DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

      For the reasons set forth in this Opinion, this Court GRANTS Defendant's Motion for Summary Judgment, DENIES Plaintiffs' Motion for Summary Judgment, and DISMISSES Plaintiffs' Complaint. This Court finds that Defendant was entitled to the "unforeseeable business circumstances" exception to the WARN Act and, therefore, the notice given by Defendant regarding Defendant's plant closings was sufficient notice.

## I.

## FACTUAL BACKGROUND

Plaintiffs were all employed by Defendant Advanced Accessory Systems (AAS). Defendant was a manufacturer of roof racks and side rails for original equipment manufacturers in the automotive industry. (Johnson Tr. 6). At the beginning of 2009, Defendant provided approximately 50% of all roof racks for cars in North America. (Fournier Tr. 92). Ninety-five percent of Defendant's work came from General Motors, Ford, Chrysler, Toyota and Nissan. (Suing Tr. 12). Plaintiffs each worked at one of three of the facilities owned by Defendant in Michigan. Defendant had between 40 and 45 employees at its Sterling Heights facility, approximately 100 employees at its Port Huron facility, and approximately 60 employees at its facility in Shelby Township. (Suida Tr. 8-9).

Alan Johnson ("Mr. Johnson") became the Chief Executive Officer of Defendant in 2005. (Johnson Tr. 8, 12). At all times relevant to this action, Mr. Johnson operated Defendant with a management team that included Human Resources Director Lisa Suida ("Ms. Suida") and Chief Financial Officer Clifford Suing ("Mr. Suing"). Ms. Suida reported to Mr. Suing. In her position as Human Resources Director, Ms. Suida was responsible for recruiting, staffing, benefits, employee relations, union relations and company policies. (Suida Tr. 10-11).

In 2003, Castle Harlan, a private equity company headquartered in New York, purchased a controlling interest in Defendant. (Suida dep, p 57).

Defendant started to have problems with profitability in 2008. (Johnson dep, pp 72-4). The downturn in the economy generally, and in the automobile industry

specifically, affected Defendant. (Exh 4, Suing dep, p 82)

In September 2008, Defendant requested relief from its major lender, Ableco. Defendant's financial problems were caused by reductions in volume as a result of the economy, tight credit markets and higher gas prices. Castle Harlan increased its letter of credit twice in 2008 to assist Defendant. (Johnson dep, p 42) As a result of Castle Harlan's actions, Ableco did not diminish the line of credit available to Defendant. (Id, p 78). Defendant's financial condition failed to improve between August 2008 and February 2009. (Johnson dep, pp 78-9).

In January 2009, Defendant closed for holiday break. Due to the poor economy and lack of volume, Defendant remained closed for an additional week. On January 12, 2009, Defendant restarted production but there was a significant decrease in the volume of the product being purchased due to plant shutdowns by Defendant's customers. As a result of the decrease in the goods being sold, Defendant forecast a liquidity problem and Ableco issued a notice of default on January 20, 2009. (Johnson dep, pp 22-23).

Following the notice of default, Ableco assumed control of Defendant's bank accounts and determined which invoices would be paid. (Johnson dep, p 75) In addition, Defendant was instructed by Ableco and Castle Harlan to engage Conway McKenzie, a financial advisory firm with experience with troubled auto-suppliers. On January 26, 2009, Conway MacKenzie was retained to assist Defendant in devising a strategy to keep the business open to give Defendant time to market the company. On January 30, 2009, Conway MacKenzie issued an Executive Summary Memo setting forth a plan to request that Defendant's customers fund Defendant's operations for

3

thirteen weeks in exchange for a guaranty that Defendant would continue to produce roof racks for the customers. (Executive Summary Memo, Plaintiff's Motion for Summary Judgment, Exhibit 1.)

On February 4, 2009, Mr. Johnson, Mr. Suing, and Conway MacKenzie, met with the key customers of Defendant to discuss Defendant's liquidity issue. (Johnson Tr. 25). Representatives from General Motors, Ford, Chrysler, Toyota and Nissan attended the meeting. (Johnson Tr. 25, 81; Suing Tr. 28, 81).

One day after Defendant met with its major customers, Nissan notified Defendant that it was rejecting Defendant's request for support and was re-sourcing its roof rack business with another supplier. (Johnson Tr. 26). However, even with the loss of business from Nissan, Defendant determined that it could continue to operate without conducting layoffs or plant closings because Nissan was not a profitable customer and represented less than 15% of Defendant's business. (Johnson Tr. 26, 29). On February 10, 2009, Mr. Johnson met with Defendant's employees (including Plaintiffs) to explain that Defendant was looking to sell itself as an ongoing business over the next 90 to 120 days. (Johnson Tr. 29-30).

One day later, on February 11, 2009, Toyota notified Defendant that it was also rejecting the offer to support Defendant and had re-sourced its roof rack business with another supplier. Within one day, General Motors, Ford and Chrysler each notified Defendant that they had each made similar decisions. (Johnson Tr. 33). The loss of work from these customers accounted for 95% of Defendant's business. (Suing Tr. 12). On February 12, 2009, Defendant recognized that it had to immediately shut down its business because it did not have enough cash on hand to operate beyond the end of

4

09-06759-mbm    Doc 44    Filed 02/08/11    Entered 02/08/11 11:42:34    Page 4 of 20

the week and had no customers from which it could bring in additional funds. Mr. Johnson explained during his deposition that "it became clear . . . that we didn't have a viable business to sell at that point in time and we had a cash situation that wasn't sustainable and notified our board and bank that we had to wind this business down." (Johnson Tr. 34).

On February 12, 2009, Mr. Johnson held meetings at each of Defendant's facilities in Michigan to provide verbal notice that the plants would close on the following day. At the meetings, Mr. Johnson explained the reasons for the short notice, namely, that its primary customers had unexpectedly announced their plans to re-source their roof rack business. (Johnson Tr. 36-38). Defendant's plants closed on February 13, 2009.

On June 26, 2009, Defendant Advanced Accessory Systems, LLC, filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code.

On October 28, 2009, Plaintiffs, which include the named Plaintiffs and all similarly situated individuals (the "putative class"), filed an Adversary Complaint alleging that Defendant violated the Plaintiffs' rights under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. 2101 et seq. (the "Warn Act"). The named Plaintiffs, and the putative class, were employees of Defendant. They were terminated on February 13, 2009 when Defendant closed all of its plants. Plaintiffs, and the putative class, allege that Defendant violated the WARN Act by failing to give Plaintiffs, and the putative class, at least sixty days advance notice of termination, as required by the WARN Act. As a consequence, Plaintiffs, and the putative class, argue that they are entitled to recover from Defendant an amount equal to their wages and ERISA benefits

5

for sixty days as required under the WARN Act.

On January 29, 2010, Defendant filed an Answer and Affirmative Defenses.

On May 24, 2010, Plaintiffs filed their Motion for Summary Judgment. In their Motion, Plaintiffs allege that Defendant failed to give any written notice of its closing as required under the WARN Act and, for this reason, Defendant is precluded from relying on any of the statutory defenses provided under the WARN Act.

On June 18, 2010, Defendant filed a Motion for Summary Judgment and Response to Plaintiffs' Motion for Summary Judgment. In its Motion for Summary Judgment, Defendant argues that: (1) the sudden loss of 95% of its customers constituted an "unforeseeable business circumstance" that precluded and excused Defendant from issuing sixty day written WARN Notice of its mass layoffs and plant closings; and (2) Defendant should also be granted summary judgment as to any WARN claims arising out of its facility in Sterling Heights, Michigan because that facility was not covered by WARN in that Defendant employed less than fifty employees at that location; and (3) any potential liability should be eliminated under the good faith defense.

On December 3, 2010, Plaintiffs filed a Brief in Opposition to Defendant's Motion for Summary Judgment. On December 17, 2010, Defendant filed a Reply Brief in Support of its Motion for Summary Judgment.

II.

SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056 (Rule 56 applies in adversary proceedings). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252. The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255.

III.

JURISDICTION

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under Title 11, or arising in a case under Title 11. 28 U.S.C. §§

1334 and 157. Core proceedings include proceedings related to the allowance or disallowance of claims against the estate. *Id.* § 157(b)(2)(B). As this is a proceeding to determine the existence of a claim against the estate, this is a core proceeding under 28 U.S.C. § 157(b). Thus, this Court has jurisdiction over this matter.

IV.

ANALYSIS

The WARN Act mandates that employers give written notice to affected employees at least sixty days before a plant closing or mass layoff. 29 USC § 2102(a). 29 U.S.C. § 2102(a) states in relevant part:

> (a) Notice to employees, State dislocated worker units, and local governments
>
>> An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order–
>>
>>> (1) to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee;

The WARN Act was adopted in response to the extensive worker dislocation that occurred in the 1970s and 1980s. *Hotel Employees & Restaurant Employees Int'l Union Local 54 v. Elisnore Shore Assocs.*, 173 F.3d 175, 180 (3rd Cir. 1999) citing Richard W. McHugh, *Fair Warning or Foul? An Analysis of the WARN Act In Practice*, 14 Berkeley J.Emp. & Lab.L. 1, 4 (1993). Congress enacted WARN to protect workers and their families from unanticipated plant closings. *See* 20 C.F.R. § 639.1(a) (1998). WARN's notice period was designed to allow workers "to adjust to the prospective loss of

employment, to seek and obtain alternative jobs and ... to enter skill training or retraining that will allow [them] to successfully compete in the job market." *Id.* The thrust of WARN is to give fair warning in advance of prospective plant closings. *Elsinore*, 173 F.3d at 182.

If the employer has knowledge more than sixty days prior to closing that a plant will be closed, the failure to comply with the notice requirement renders the employer liable to each terminated employee for an amount equal to pay and benefits received by the employee while the employer was in violation of the WARN Act. 29 U.S.C. § 2104(a). If written notice is required, the information to be contained in the written notice is set forth in 20 C.F.R. § 639.7. The written notice must include a statement as to whether the lay-off is expected to be permanent or temporary, the expected commencement date of the plant closing and the expected date of the individual employee's separation, a statement regarding bumping rights and the name and telephone number of a company official to contact for further information. 20 C.F.R. § 639.7.

If an employer does not have sixty days advance notice that the plant will close, the employer is excepted from the notice requirements of 29 U.S.C. § 2102(a). Under 29 U.S.C. § 2102(b)(2)(A), "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required."

Section 2102(b)(3) requires that employers relying on section § 2102(b) "give as much notice as is practicable and at that time shall give a brief statement of the basis

9

09-06759-mbm    Doc 44    Filed 02/08/11    Entered 02/08/11 11:42:34    Page 9 of 20

for reducing the notification period." With respect to § 2102(b), the Code of Federal Regulations, 20 C.F.R. § 639.9, states in relevant part that:

> The employer bears the burden of proof that conditions for the exceptions have been met. If one of the exceptions is applicable, the employer must give as much notice as is practicable to the union, non-represented employees, the State dislocated worker unit, and the unit of local government and this may, in some circumstances, be notice after the fact.

The last line of 20 C.F.R. § 639.9 states:

> The employer must, at the time notice actually is given, provide a brief statement of the reason for reducing the notice period, in addition to the other elements set out in § 639.7.

This last sentence of 20 C.F.R. § 639.9 arguably creates an ambiguity. Employers subject to unforeseeable business circumstances are only required to give as much notice as practicable and that degree of notice may preclude compliance with the requirements of 20 C.F.R. § 639.7. *See In re Watson*, 311 F.3d 760 (6th Cir. 2002)(the unforeseeable business circumstances exception in § 2102(b)(2)(A) relieved the employer from any requirement to provide notice to plaintiffs concerning the closure of the Jackson plant). Given the Sixth Circuit's ruling in *Watson*, the last sentence of 20 C.F.R. § 639.9 must be construed to mean that an employer must comply with 20 C.F.R. § 639.7, to the extent that compliance is practicable under the circumstances.

A. <u>Defendant Met its Burden of Proof That the "Unforeseeable Business Circumstances" Exception Applies to this Case</u>.

In this case, Defendant argues that the "unforeseeable business circumstances" exception set forth in 29 U.S.C. § 2102(b)(2)(A) applies and, therefore, Defendant's failure to give sixty days written notice does not subject Defendant to liability under the WARN Act. To satisfy the "unforeseeable business circumstances" exception, the party

10

asserting the defense must establish that: (1) the circumstance was unforeseeable; and (2) the layoffs were caused by that circumstance. *Gross v. Hale-Halsell Company*, 554 F.3d 870, 875 (10th Cir. 2009); *Roquet v. Arthur Andersen LLP*, 398 F.3d 585, 588 (7th Cir. 2005).

      1.      <u>Foreseeability</u>

With respect to foreseeability, an "important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition outside the employer's control." 20 C.F.R. § 639.9(b)(1). For example, a "principal client's sudden and unexpected termination of a major contract with the employer ... might ... be considered a business circumstance that is not reasonably foreseeable." *Id.* The regulations instruct that the test for foreseeability "focuses on an employer's business judgment. The employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market." 20 C.F.R. § 639.9(b)(2). The Department of Labor has indicated that an objective test should be applied to analyze the "commercial reasonableness of the employer's actions," and that "[e]ach claim of unforeseeable business circumstances must be examined on its own merits ... in terms of whether the employer reasonably ... could not foresee that the event would occur...." *Gross*, 554 F.3d at 875, 876 citing *Employment and Training Administration*, 54 Fed.Reg. 16,042, 16,061-63 (April 20, 1989) (codified at 20 C.F.R. pt. 639).

In *Loehrer v. McDonnell Douglas Corp.*, 98 F.3d 1056 (8th Cir.1996), the United States government withdrew its support for a new fighter plane resulting in employee

11

layoffs by government contractors. The Eighth Circuit Court of Appeals applied the "unforeseeable business circumstance" exception, stating that, in light of the commercially reasonable business judgment test, the WARN Act:

> necessarily recognize[s] that even the most conscientious employers are not perfect, and ... thus allow[s] needed flexibility for predictions about ultimate consequences that, though objectively reasonable, proved wrong. So long as it may still fairly be said that the eventual plant closing or mass layoff is caused by a sudden, dramatic, and unexpected event outside the employer's control, the exception applies.

*Loehrer*, 98 F.3d at 1061. *See also, Halkias v. Gen. Dynamics Corp.*, 137 F.3d 333, 336 (5th Cir.1998)(it is the probability of occurrence that makes a business circumstance 'reasonably foreseeable' rather than the mere possibility of such a circumstance. The mere possibility of a plant closing is insufficient to trigger the sixty day notice requirement.); *Watson*, 311 F.3d at 765 ("WARN was not intended to force financially fragile, yet economically viable, employers to provide WARN notice and close its doors when there is a possibility that the business may fail at some undetermined time in the future. Such a reading of the Act would force many employers to lay off their employees prematurely....").

Plaintiffs argue that the closing of Defendant's plants was foreseeable and, because it was foreseeable, Defendant was required to give sixty days written notice as required by 29 U.S.C. § 2102(a). Plaintiffs note that Defendant had not operated profitably since 2007 and that, by January 2009, Defendant's only plan was to either negotiate a quick sale or an orderly liquidation of its assets. Plaintiff argues that Conway MacKenzie's request for customer financing for the time necessary to negotiate a sale was unrealistic and that Defendant had to have known that it was going to close

its plants.

Defendant's position is that the plant closings were not a probability until February 12, 2009 when 95% of Defendant's customers terminated their business with Defendant. The question before the Court is whether, under an objective standard, a "similarly situated employer in the exercise of commercially reasonable business judgment would have foreseen" the customer's withdrawal of their business. *Elsinore*, 173 F.3d at 186. In this evaluation, "we consider the facts and circumstances that led to the [layoffs] in light of the history of the business and of the industry in which that business operated." *Id.*

In this case, Defendant retained Conway MacKenzie, an experienced financial adviser, on January 26, 2009. Conway MacKenzie was retained at the request of Ableco and Castle Harlan to advise Defendant as to how to best market itself. Conway MacKenzie issued an Executive Summary Memo on January 30, 2009 outlining its recommendation that Defendant seek interim financing from its current customers for a period of 90 to 120 days until Defendant could be sold. On February 4, 2009, Conway MacKenzie met with Defendant's customers for the purpose of requesting that the customers fund Defendant's operations for this limited period of time in exchange for a guaranteed supply of product during that time.

The Court finds that Defendant's actions in January and early February 2009 were consistent with those of similarly situated employers and were commercially reasonable attempts to keep the business afloat long enough to sell. Defendant's goal was to sell the business as a going concern and Defendant adopted a business strategy to accomplish that goal. The Court looks to whether Defendant's judgment was

13

reasonable at the time decisions were made, not at whether Defendant's judgment ultimately proved to be correct. As noted by the Sixth Circuit in *Watson,* 311 F.3d at 765, the WARN Act does not require an employer to assume its efforts to keep a business open will fail. This Court finds Defendant's actions in January and early February, 2009 were consistent with those of similarly situated employers in the automotive-supply business. Because Defendant's actions in pursuing customer funding were commercially reasonable, Defendant's customers' decisions to terminate their business relationships were not foreseeable.

 2. <u>Causation</u>

Having shown that the customers' failure to provide financing or additional work for Defendant was not foreseeable, Defendant must also show that the customers' re-sourcing of its work to alternative suppliers was the cause of the business closing. Plaintiffs argue that the circumstance which caused the plant closings was Defendant's deteriorating financial condition. Plaintiffs, however, fail to pinpoint a date prior to February 12, 2009, on which Defendant should have known that a plant closing was inevitable. Plaintiffs simply argue that Defendant should have known that seeking customer financing was doomed to failure and that the customers refusal to give Defendant either business or cash was not the cause of the plant closings.

This Court disagrees. This Court finds that Defendant's customers' decisions to re-source their work elsewhere was the immediate cause of the business closure. Although Defendant had been having financial troubles, the decision to shut the business only came after Defendant had lost 95% of its customers in a 24 hour period.

14

This Court finds that Defendant had a reasonable belief that the business could be sold if it could continue to operate another ninety to one hundred and twenty days with the help of its customers. *See Jones v. Kayser-Roth Hosiery*, Inc. 748 F. Supp. 1276, 1285-86 (E.D. Tenn. 1990)(holding that the loss of a major account satisfied the causation prong of the "unforseeable business circumstances" exception).

In summary, this Court finds that Defendant has met its burden that the "unforeseeable business circumstances" exception applies to this case. Specifically, this Court finds that Defendant's sudden loss of 95% of its customers in a 24 hour period was not foreseeable and was the cause of the business closure.

B. <u>Because Defendant Has Shown That the "Unforeseeable Business Circumstances" Exception Applies to this Case, the Defendant Was Required to Give as Much Notice as Practicable under § 2102(b)(3)</u>.

Because Defendant has shown that the "unforeseeable business circumstances" exception applies to this case, Defendant was required to give as much notice as practicable under § 2102(b)(3). This position is supported by numerous cases. In *Watson,* 311 F.3d at 764-66, the Sixth Circuit upheld the application of the unforeseeable business circumstances exception to dismiss WARN claims despite the fact that the employer who asserted the defense provided no advance notice or warning to its employees. The Court stated, "MIHI was excused from the WARN Act notice requirement under the unforeseeable business circumstances exception." *Id.* at 766. See also, *Pena v. American Meat Packing Corp.,* 362 F.3d 418, 421-22 (7th Cir. 2004) ("[u]nder WARN, the required 60-day notice period may be reduced or eliminated if the closing was caused by "business circumstances that were not reasonably foreseeable

15

as of the time that notice would have been required."); *Loehrer*, 98 F.3d at 1061, 1063 (the 8th Circuit found that "the exception for unforeseeable business circumstances shields [the employer] from liability under the WARN Act."); *Elisnore*, 173 F.3d at 180, 184 (the 3rd Circuit stated that "WARN's 60-day notice period is reduced or eliminated if the closing or mass layoff is 'caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.'"); *Roquet*, 398 F.3d at 591 (Seventh Circuit Court upheld the district court's dismissal of the WARN Act suit under the Acts' "unforeseen business circumstance" exception despite minimal notice).

In this case, Defendant was required to give notice as soon as practicable. Defendant gave such notice. 29 U.S.C. § 2102(b)(3). On February 11, 2009 and February 12, 2009, Defendant was informed that the customers who purchased 95% of its product were terminating their business immediately. As of February 12, 2009, Defendant had no customers and no cash. On February 12, 2009, Defendant gave all of its employees verbal notice that the plants would have to close and fully explained the reasons for the plant closing. As Mr. Johnson, Defendant's president explained in his deposition:

> Q      And what information did you convey to employees on February 12?
>
> A      I explained that we had lost the Toyota business, it was going to be resourced, that the other customers were going to resource their business, the Nissan business was gone and that neither Castle Harlan nor Ableco, our banks, were going to put any more money into the business and the customers weren't going to support us in an effort to give us the time to sell the business and that I had to report that tomorrow would be their last day.

16

(Johnson dep, pp. 36, 37). On February 13, 2009, the plants closed. On these facts, where Defendant had no ability to operate without customer business or customer cash, one day notice was the only option available to Defendant. Defendant gave notice as soon as practicable and is, therefore, not subject to WARN Act liability.

C.   This Court Rejects Plaintiffs' Argument That Defendant Is Not Entitled to Rely on the "Unforeseeable Business Circumstances" Exception to the Warn Act Because Defendant Did Not Provide Plaintiffs with Written Notice under the Act.

Plaintiffs argue that, because Defendant did not provide written notice under § 2102(a) of the WARN Act, Defendant cannot assert the defenses in § 2102(b)(2)(A). In essence, Plaintiffs are arguing that the WARN Act is a strict liability statute: if sixty-days written notice is not given by the employer, then the employer is strictly liable to its employees and is not allowed to assert any of the defenses set forth in 29 U.S.C. § 2102(b).

Plaintiffs cite case law in support of their position that, because Defendant did not issue a written notice sixty days in advance of closing its plants, Plaintiff cannot rely on the statutory exceptions to the Act. *See, Graphic Communications, International Local v. Bureau of Engraving,* 2003 WL 21639146 (D. Minn. 2003)(the failure to provide notice meeting the statutory requirements of the WARN Act precludes any reliance on the defenses); *United Paperworkers Int'l Union v. Alden Corrugated Container Corp,* 901 F. Supp. 426, 440 (D. Mass. 1995) (dicta stating "it appears likely that this failure alone [WARN Act notice] would constitute sufficient grounds to deny the applicability of the exemption provisions."); *Barnett, et. al. v. Jamesway Corp,* 235 B.R. 329, 343 (Bankr. S.D.N.Y. 1999) ("because Jamesway failed to give WARN notices to the plaintiffs, it

17

cannot assert…the…faltering company exception to the Act as a defense to liability.);
*Watts v. Marco Holdings,* 1998 WL 21770 (N.D. Miss. 1998) (employer who gave no notice at all, could not rely on unforeseeable business circumstances exception); *Childress v. Darby Lumber,* 126 F. Supp.2d 1310, 1319 (D. Mont. 2001)*(*the court found that an employer which shut down a sawmill was liable under the WARN Act regardless of the possible applicability of the faltering company defense because the one-day notice neither mentioned the shortened notice nor the reason the proper notice was not given); *In re Organogenesis, Inc.,* 316 B.R. 574, 585 (D. Mass. 2004) *aff'd* 331 B.R. 500 (2005)(because the employer "admitted its failure to give any written notice whatsoever under the WARN Act to the Claimants, it cannot rely on the asserted defenses that require an employer to have given reduced notice as soon as practicable.")

This Court rejects Plaintiffs' argument and finds the case law cited by Plaintiffs unpersuasive. The statute does not require that an employer provide sixty days written notice as a pre-condition to asserting one of the defenses set forth in the Act. Contrary to Plaintiffs' arguments, the WARN Act sets up two distinct types of notice depending on the foreseeability of a plant closing. If the employer is transferring its business or closing on a date certain, the employer is required to give sixty days written notice under 29 U.S.C. § 2102(a). If the plant closing is caused by circumstances that could not be foreseen, the notice that is required is whatever is practicable under the circumstances. 11 U.S.C. § 2102(b)(3). It is nonsensical to argue that an employer who only has a day or two of notice that its customers are not buying any more goods, must give sixty days notice that its plants are closing. An employer cannot give sixty days advance notice of the plant closing if, on the sixtieth day before the plant closes,

the employer still has a reasonable expectation that the plant will remain open. The failure to give sixty days notice only defeats a defendant's defense if the employer could have given sixty days notice and failed to do so. In this case, sixty days prior to Defendant's closing its plants, that being December 13, 2008, Defendant still believed the business could be sold as a going concern.

With regards to the case law cited by Plaintiffs, the cases are fact intensive and the holdings are not easily applied outside the specific facts of those cases. The determination of liability seems to have been based on a specific factual context, rather than a careful analysis of the statute. In addition, none of the cases cited by Plaintiffs are from this circuit, and none are appellate law. The case law relied upon by Defendant and this Court, most importantly the *Watson* decision from this Circuit, correctly concludes that a defendant is excepted from giving sixty days written notice if the defendant could not have foreseen that the plant would close within sixty days.

This Court finds that Defendant's layoff of Plaintiffs and similarly situated employees resulted from "unforeseeable business circumstances". Under the WARN Act, 29 U.S.C. 2102(b)(3)(A), Defendant was only required to give as much notice as practicable. In this case, one day notice was all that was practicable. Since Defendant is excepted from giving the sixty day written notice required by 29 U.S.C. § 2102(a), Defendant is not liable to Plaintiffs.

V.

## CONCLUSION

For the above stated reasons, this Court DENIES the Plaintiffs' Motion for Summary Judgment and GRANTS the Defendant's Motion for Summary Judgment. Plaintiffs' Complaint is DISMISSED.

Signed on February 08, 2011

                                          /s/ Marci B. McIvor
                                          Marci B. McIvor
                                          United States Bankruptcy Judge